IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**DANIEL LEE HALL, SR.**

      **Plaintiff**

v.       Case No. 2:15-cv-12543

**WARDEN DAVID BALLARD,
C.O. JUSTIN CROOK, and
WV DOC *et al.*,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the plaintiff's Complaint (ECF No. 1). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## ALLEGATIONS IN COMPLAINT

The plaintiff's Complaint addresses a number of different allegations concerning his conditions of confinement when he was previously incarcerated at the Mount Olive Correctional Complex in Mount Olive, West Virginia. The plaintiff, who is a frequent litigator known to this court, is now in the custody of the Federal Bureau of Prisons at FCI Butner Medium II, in Butner, North Carolina.

The instant Complaint alleges that, on August 3, 2015, the plaintiff was transferred from the Huttonsville Correctional Center (HCC") to the Mount Olive Correctional Complex ("MOCC") despite the fact that a "Do Not Transfer" order was in place. Upon arrival at MOCC, the plaintiff was advised that he was on "staff contact only" status. The

plaintiff further alleges that he was taken to the medical unit by C.O. Rose and C.O. White for processing, and that there were 8-10 unrestrained inmates in the medical unit at that time. The plaintiff further alleges that he was handcuffed and shackled, and taken into a hallway, where Rose and White told him "You shouldn't have come back. Ballard and Crook are not happy about it." The plaintiff further alleges that Rose then slammed him against the wall and he fell on his back. He further claims that Rose began kicking him in the sides, back, and head. He also claims that an unidentified nurse stood by, watching and laughing.

The plaintiff further claims that Rose pulled down his pants and squeezed his testicles until he threw up. He further claims that the unidentified nurse spit in his face and said "F--- you." Then, the officers allegedly stood him up and forced him to sign medical papers. The plaintiff claims that he was bleeding from his left ear and the head of his penis. Nevertheless, he was taken to cell 525 in the QI unit and left there for several hours without assistance. The plaintiff further claims that he continued to urinate blood for six to seven days and that he still has hearing and vision problems as a result of this incident. The plaintiff further claims that he wrote a letter to the warden about this incident and was subsequently threatened by an unidentified counselor, who stated that, if he wrote the warden again, he would get it twice as bad. He further claims that he was placed near an inmate who had previously threatened him, who continually threatened him for five days while he was in segregation. He further complains generally about the conditions of confinement in segregation at MOCC.

The plaintiff's Complaint alleges that all of these actions violated his Eighth and Fourteenth Amendment rights and he seeks declaratory and injunctive relief, as well as monetary damages, from the defendants in both their individual and official capacities.

## **STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1915A, where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the court is obliged to screen each case and must dismiss a claim if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints.  However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.

\* \* \*

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## ANALYSIS

### A. The plaintiff failed to properly exhaust his administrative remedies prior to filing his Complaint.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), was enacted "to address concerns about the 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement that prisoners exhaust administrative remedies within the prison before filing a civil action." *Id.*

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is

4

mandatory, regardless of the type of relief sought or offered through the administrative procedures.  *Id.* at 741.  In *Booth*, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action.  *Id.*

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)).  Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c).  The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life. . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures,

5

> has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

Non-exhaustion under the PLRA is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). However, where the allegations in the Complaint, taken as true, demonstrate that the plaintiff has not first exhausted his administrative remedies, courts may dismiss such claims *sua sponte*. *Id.* at 199, 214-16; *see also Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017); *see also Banks v. Marquez*, 694 F. App'x 159 (4th Cir. 2017) (finding no error in *sua sponte* dismissal where inmate admitted that he failed to exhaust administrative remedies).

While "failure to exhaust available administrative remedies is an affirmative defense," it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. *Id.* at 216; *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. *See Legg*, 2017 WL 72604, at *2. Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

At the time of the subject incidents, Section 90 of the West Virginia Code provided the procedures that inmates were required to follow when filing a grievance. Specifically, an inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." W. Va. Code St. R.

6

§ 90-9-4.1. The grievant is limited to one issue or complaint per form, and the form is to be submitted to the unit manager. W. Va. Code St. R. §§ 90-9-4.2, 90-9-4.3. The unit manager is expected to respond to the grievance within five (5) days. W. Va. Code R. § 90-9-4.5. If the unit manager fails to respond in that time frame, the inmate may treat the non-response as a denial of the grievance and may proceed to appeal the grievance to the Warden, stating that he did not receive a response. *Id.* Accordingly, the inmate is still expected to address his grievance through all levels of the grievance procedure.

In the instant case, the plaintiff alleges that he filed grievances on August 3, 2015, but no response had been given and, thus he "moved ahead with the proceeding Complaint due to his fear of imminent danger, death by DOC staff." (ECF No. 1 at 5). Thus, it is apparent from the face of the Complaint that the plaintiff filed the instant Complaint before completely exhausting the WVDOC administrative remedy process concerning any of his claims. Taking as true his allegation that he filed grievances on August 3, 2015, but received no response from the unit manager within five days, the procedures called for the grievances to be deemed denied and the plaintiff was required to appeal to the warden and then to the commissioner. The plaintiff filed the instant Complaint on August 19, 2015, before the time period for compliance with each level of the grievance process had passed. Moreover, the plaintiff has not alleged or demonstrated that the administrative remedies were unavailable to him. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016).

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint should be dismissed in its entirety under 42 U.S.C. § 1997e(a) and W. Va. Code § 25-1A-2(c) for failure to properly exhaust the available administrative remedies.

7

### B. The plaintiff's claims for declaratory and injunctive relief are moot in light of his transfer from MOCC.

Since the filing of his Complaint, the plaintiff was released from the custody of the West Virginia Division of Corrections and is now in the custody of the Federal Bureau of Prisons in North Carolina. Based upon the plaintiff's transfer from MOCC, all forms of declaratory and injunctive relief sought in this court are now moot.

The power of the federal courts to adjudicate claims turns on the existence of a case or controversy. U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue." *Taylor v. Riverside Regional Jail Authority*, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

As noted in *Taylor*, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.") For these reasons, the undersigned proposes that the presiding District Judge **FIND** that any claims for declaratory and injunctive relief made by the plaintiff herein must be denied and dismissed as moot.

### C.     The WVDOC and the other defendants in their official capacity are immune from a suit for damages under section 1983 in federal court.

To the extent that the plaintiff also seeks monetary damages from the defendants in their official capacities, such relief is barred by the Eleventh Amendment to the United States Constitution.  Pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state.  *Hans v. Louisiana*, 134 U.S. 1, 9 (1980).  Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury.  *Quern v. Jordan*, 440 U.S. 332, 337 (1979).  Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).  Moreover, in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that neither a State nor its officials acting in their official capacities are "persons" under section 1983.  Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff cannot state any plausible claims for relief against the WVDOC or the other defendants in their official capacities.

### RECOMMENDATION

For all of the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the Complaint (ECF No. 1) pursuant to 28 U.S.C. § 1915A, and dismiss this civil action from the docket of the court.

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff at the following address: Daniel Lee Hall, Sr., #09019-088, FCI Butner Medium II, Federal Correctional Institution, P.O. Box 1500, Butner, NC 27509.

July 11, 2018

Dwane L. Tinsley
United States Magistrate Judge